# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANPOLIS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    Case No. 1:08-cr-39-SEB-MJD |
| *Plaintiff,* | ) |
| | ) |
| v. | )    **ORAL ARGUMENT** |
| | )    **REQUESTED** |
| DARRYL TAYLOR, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 2

BACKGROUND ................................................................................................................ 3

ARGUMENT .................................................................................................................... 5

   A.   This Court Now Has the Authority to Grant the Relief Requested. ................................. 6

      1.   Congress Directed the Commission to Provide Guidance to Courts on "Extraordinary and Compelling Reasons." ................................................... 7

      2.   The First Step Act – Congress Fixes § 924(c) and Removes BOP as the Sentence Reduction Gatekeeper. ..................................................... 9

      3.   For Three-Plus Years, Sentence Reduction Motions Are Decided Without an Applicable Policy Statement. ..................................................... 10

      4.   The Commission Resolves the Circuit Split and Gives Courts the Authority to Consider a Very Narrow Category of Unusually Long Sentences as Presenting an "Extraordinary and Compelling" Reason to Reduce a Sentence in the Circumstances Presented Here. ..................................................... 14

      5.   The Court is No Longer Bound by *Thacker's* Interim Guidance. ................................ 16

   B.   Extraordinary and Compelling Circumstances Warrant a Reduction in Taylor's Sentence. ..................................................... 18

      1.   Taylor's Unusually Long Sentence, Combined with His Ten-Plus Years Served and the Dramatic Disparity Caused by a Nonretroactive Change in Law Presents an Extraordinary and Compelling Reason for Relief Under Subsection (b)(6). ..................................................... 19

      2.   Taylor Has Presented Sufficient and Independent Grounds for Relief Under Subsection (b)(5)'s "Other Reasons" Provision. ..................................................... 22

   C.   The § 3553(a) Factors Support a Sentence Reduction, and Taylor Poses No Danger to the Public. ..................................................... 29

      1.   The Relevant § 3553(a) Factors Weigh Heavily in Favor of Relief ............................ 30

      2.   Taylor is Not a Danger. ..................................................... 31

CONCLUSION ..................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Batterton v. Francis*, 432 U.S. 416 (1977) ......................................................... 8, 17, 18

*Bellamy v. United States*, 474 F. Supp. 3d 777 (E.D. Va. 2020) .................................. 26

*Braxton v. United States*, 500 U.S. 344 (1991)............................................................. 13

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984)........................... 18

*Concepcion v. United States*, 142 S. Ct. 2389 (2022)...................................................... 8

*Johnson v. United States*, 576 U.S. 591 (2015) ............................................................... 4

*Mistretta v. United States,* 488 U.S. 361 (1989)............................................................... 7

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) ......... 16, 17, 18

*Pepper v. United States*, 562 U.S. 476 (2011) .............................................................. 29

*Rush Univ. Med. Ctr. v. Burwell*, 763 F.3d 754 (7th Cir. 2014)........................... 8, 16, 17

*United States v. Adams*, 512 F. Supp. 3d 901 (E.D. Mo. 2021) .................................... 23

*United States v. Allen*, No. 1:09-cr-320, 2024 WL 631609 (N.D. Ga. Feb. 12, 2024)................ 14

*United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021) ................................................. 13

*United States v. Baker*, No. 10-20513, 2020 WL 4696594 (E.D. Mich. Aug. 13, 2020)............. 26

*United States v. Black*, 815 F.3d 1048 (7th Cir. 2016) ........................................... 14, 17

*United States v. Black*, 999 F.3d 1071 (7th Cir. 2021) ................................................. 12

*United States v. Black*, No. 05 CR 70-4, 2024 WL 449940 (N.D. Ill. Feb. 6, 2024) .................. 18

*United States v. Boyer*, No. 1:14-cr-00035, 2023 WL 8927607 (N.D. Ind. Dec. 26, 2023)......... 15

*United States v. Brock*, 39 F.4th 462 (7th Cir. 2022)..................................................... 24

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ................................................. 25

*United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289 (E.D. Wis. Aug. 7, 2020) 21, 30

*United States v. Brown*, No. 2:95-cr-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024) ...... 14, 18

*United States v. Capps*, No. 1:11-cr-00108-AGF, 2024 WL 880554 (E.D. Mo. Jan. 31, 2024).. 14

*United States v. Chan*, No. 96-CR-00094-JSW-13, 2020 WL 1527895 (N.D. Cal. Mar. 31, 2020) ........................................................................................................................... 26

*United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)............................................. 12, 13

*United States v. Conley*, No. 11 CR 0079-6, 2021 WL 825669 (N.D. Ill. Mar. 4, 2021)............. 24

*United States v. Crandall*, 25 F.4th 582 (8th Cir. 2022)................................................. 13

*United States v. Davis*, 139 S. Ct. 2319 (2019) ...................................................... 4, 21

*United States v. Fowler*, 544 F. Supp. 3d 764 (N.D. Tex. 2021).................................... 26

*United States v. Glover*, No. 8:07-CR-00960-JMC-15, 2022 WL 3025753 (D.S.C. Aug. 1, 2022) .......................................................................................................... 21

*United States v. Green*, No. 2:15-cr-25, 2023 WL 5994140 (N.D. Ind. Sept. 15, 2023) .............. 7

*United States v. Griner*, Crim. No. 07-160 PJM, 2023 WL 2025079 (D. Md. Feb. 14, 2023) .... 21

*United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) .................................... 6, 8, 11, 13

*United States v. Harris*, No. 06 CR 586, 2023 WL 6847104 (N.D. Ill. Oct. 17, 2023) .............. 31

*United States v. Harris*, No. CR 97-399-1, 2020 WL 7861325 (E.D. Pa. Dec. 31, 2020) ........... 26

*United States v. Haynes*, No. 4:96-CR-40034, 2021 WL 406595 (C.D. Ill. Feb. 5, 2021) .... 12, 20

*United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022)............................................. 13

*United States v. Johnson*, No. 1:97-CR-314-AJT, 2023 WL 5049267 (E.D. Va. Aug. 8, 2023) . 25

*United States v. Kerby*, No. 8:02-cr-336, 2022 WL 16837039 (D. Neb. Nov. 9, 2022) ............. 23

*United States v. King*, 40 F.4th 594 (7th Cir. 2022) ............................................. 11, 13

*United States v. Kurzynowski*, 17 F.4th, 756 (7th Cir. 2021) .................................... 9, 29

*United States v. Liscano*, No. 02 CR 719-16, 2021 WL 4413320 (N.D. Ill. Sept. 27, 2021)....... 24

*United States v. Littles*, No. 1:98-cr-056, 2022 WL 4473609 (M.D. Pa. Sept. 26, 2022) ........... 23

*United States v. Logan*, No. 07 CR 270-2, 2023 WL 2771165 (N.D. Ill. Apr. 4, 2023) .. 19, 24, 26

*United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020)....................................................... 26

*United States v. Martinez*, No. 2:01-cr-00564-TC, 2024 WL 866822 (D. Utah Feb. 29, 2024) .. 17

*United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) ............................................................ 25

*United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020) .............................................................................................................................................. 25

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc) .............................................. 13

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).......................................................... passim

*United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021)....................................................... 12, 13

*United States v. McMaryion*, No. 21-50450, 2023 WL 4118015 (5th Cir. 2023 June 22, 2023) ............................................................................................................................................. 13

*United States v. Norris*, No. 1:08-cr-00170, 2020 WL 6583084 (S.D. Ind. Nov. 10, 2020)........ 31

*United States v. Nunez*, No. 104-CR-00161 (SEB) (DKL), 2024 WL 51189 (S.D. Ind. Jan. 3, 2024) ............................................................................................................................................. 16

*United States v. Padgett*, No. 5:06-cr-13 (RH), 2024 WL 676767 (N.D. Fla. Jan. 30, 2024)...... 15

*United States v. Peoples*, 41 F.4th 837 (7th Cir. 2022) ........................................................ 19, 26

*United States v. Peoples*, No. 3:98-CR-55(3)-RLM, 2021 WL 2414102 (N.D. Ind. June 14, 2021) ............................................................................................................................................. 12

*United States v. Reyes*, No. 04-cr-970, 2020 WL 1663129 (N.D. Ill. Apr. 3, 2020).................... 23

*United States v. Robinson*, No. 89-cr-908, 2022 WL 4119800 (N.D. Ill. Sept. 9, 2022) ............. 23

*United States v. Rogers*, No. CR-13-15-BU-BMM, 2023 WL 121224 (D. Mon. Jan. 6, 2023) .. 28

*United States v. Rollins*, 540 F. Supp. 3d 804 (N.D. Ill. 2021)............................................... 12, 20

*United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022) ....................................................... 12, 13

*United States v. Santilli*, No. 18 CR 357-1, 2020 WL 6446665 (N.D. Ill. Nov. 3, 2020) ........... 31

*United States v. Shaw*, 957 F.3d 734 (7th Cir. 2020)................................................................... 29

*United States v. Shaw*, No. 5:13-CR-00025, 2021 WL 300726 (W.D. Va. July 15, 2021).......... 21

*United States v. Spagnola*, No. 07 CR 441-2, 2023 WL 5004396 (N.D. Ill. June 22, 2023) . 26, 30

*United States v. Sparkman*, No. 09-cr-0332-07, 2020 WL 6781793 (N.D. Ill. Nov. 18, 2020) ... 20

*United States v. Steele*, No. 10-20037-01-JWL, 2021 WL 2711176 (D. Kan. July 1, 2021) ....... 28

*United States v. Steward*, No. 1:95-CR-05111-JLT, 2022 WL 1645087 (E.D. Cal. May 24, 2022) .................................................................................................................................... 26

*United States v. Taylor*, 142 S. Ct. 2015 (2022) .................................................................... 4, 21

*United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021) .......................................................... passim

*United States v. Tinsley*, No. 117-CR-00064 (SEB) (MJD), 2024 WL 181704 (S.D. Ind. Jan. 17, 2024) .................................................................................................................................... 16

*United States v. Vaughn*, 62 F.4th 1071 (7th Cir. 2023) ............................................................ 11

*United States v. Ward*, No. 09 CR 687-3, 2023 WL 5004408 (N.D. Ill. June 22, 2023) ............ 26

*United States v. White*, No. 09 CR 687-4, 2021 WL 3418854 (N.D. Ill. Aug. 5, 2021) ............. 24

*United States v. Williams*, 65 F.4th 343 (7th Cir. 2023) ............................................................. 13

*United States v. Williams*, No. 06 CR 50055-(1), 2020 WL 6940788 (N.D. Ill. Nov. 25, 2020) ............................................................................................................................... 19, 21

*United States v. Williams*, No. CR 91-559-6 (TFH), 2021 WL 5206206 (D.D.C. Nov. 9, 2021) .................................................................................................................................... 26

*United States v. Young*, No. 110-CR-00003 (SEB) (MJD), 2024 WL 554276 (S.D. Ind. Feb. 9, 2024) .................................................................................................................................... 16

**Statutes**

18 U.S.C. § 3142(g) ............................................................................................................... 29, 30

18 U.S.C. § 3553(a) .......................................................................................................... 6, 7, 29, 30

18 U.S.C. § 3582(c)(1)(A) ........................................................................................................ passim

18 U.S.C. § 924(c) .................................................................................................................... passim

28 U.S.C. § 2255 ............................................................................................................................. 4

28 U.S.C. § 994(t) .................................................................................................................. 6, 7, 8

First Step Act of 2018, § 403(a), 132 Stat. 5194 ........................................................ 21

Ind. Code § 35-50-2-1(c)(3) (2009) ......................................................................... 24

Ind. Code § 35-50-2-1(c)(5) (2009) ......................................................................... 24

Ind. Code § 35-50-3-1(b) (2009) ............................................................................. 24

**Other Authorities**

BJ Casey et al., *How Should Justice Policy Treat Young Offenders?: A Knowledge Brief of the MacArthur Foundation Research Network on Law and Neuroscience* (Feb. 2017) ............... 32

Br. for the United States in Opp'n to Grant of Cert., *Jarvis v. United States* (No. 21-568) ......... 13

Br. for the United States in Opp'n to Grant of Cert., *United States v. Thacker* (No. 21-877) 13, 14

Br. for the United States in Opp'n to Grant of Cert., *United States v. Watford* (No. 21-551) ...... 13

Br. for the United States in Opp'n to Grant of Cert., *United States v. Williams* (No. 21-767) .... 13

James C. Howell et al., *Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* (2013) ................................................................................................................. 25

Lois M. Davis, et al, *Evaluating the Effectiveness of Correctional Education*, RAND Corporation (2013) ................................................................................................................. 27

Richard Stansfield & Thomas J. Mowen, *Religious Involvement, Moral Community and Social Ecology: New Considerations in the Study of Religion and Reentry*, 35 J. Quantitative Criminology 493 (2019) ........................................................................................ 31

S. Rep. No. 98–225 (1983) ....................................................................................... 7

U.S. Dep't of Just., Off. of the Att'y Gen., *First Step Act Annual Report* (April 2023) ............... 9

U.S. Dep't of Just., Off. of the Inspector Gen., The Fed. Bureau of Prisons' Compassionate Release Program (Apr. 2013) ................................................................................ 10

U.S. Dep't of Just., *Prison Reform: Reducing Recidivism By Strengthening The Federal Bureau of Prisons* (last updated Mar. 6, 2017) ................................................................. 27

U.S. Sent'g Comm., *FY22 Quick Facts on 18 U.S.C. § 924(c) Firearms Offenses* (April 2023) 20

U.S. Sent'g Comm'n, *Quick Facts Robbery Offenses* (Aug. 2023) ............................................. 20

U.S. Sent'g Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* (2016) .................................................................................................................. 32

U.S. Sent'g Comm'n, *Sourcebook of Federal Sentencing Statistics* (2022) .............................. 20

**Regulations**

U.S.S.G. § 1B1.13 ......................................................................................... passim

U.S.S.G. § 2T1.1 ................................................................................................ 14

## INTRODUCTION

In 2007, Darryl Taylor, then 21 years old, participated in one armed robbery and one attempted armed robbery in Indianapolis, Indiana. No one was physically injured during either crime, and less than $250 was stolen. However, due to the "stacking" of charges under 18 U.S.C. § 924(c), Taylor was sentenced by this Court to a prison term of 37 years, driven by a mandatory and consecutive 35 years on Taylor's two § 924(c) charges.

Taylor, now 37 years old, has grown and matured over the course of 15 years in custody. He has accepted responsibility for his actions and is not the same impulsive youth who committed the robberies over 16 years ago. Because of the First Step Act of 2018 and the Supreme Court's 2022 decision in *United States v. Davis* and *United States v. Taylor*, Taylor would not face the same "stacked" charges today.

Although this Court acknowledged at sentencing that the mandatory time was "not reasonable," it denied his 2020 motion for a sentence reduction because it concluded that under then-controlling Seventh Circuit precedent it did not have the authority to consider whether non-retroactive changes in the law could constitute an extraordinary and compelling reason warranting a sentence reduction. That has now changed.

The United States Sentencing Commission (the "Commission"), which was directed by Congress to provide binding guidance to courts on sentence reduction motions, has recently amended § 1B1.13 of the Sentencing Guidelines (the "Guidelines"). Among other things, the amended policy statement authorizes courts to grant relief where there are extraordinary and compelling circumstances like those in Taylor's case. Specifically, § 1B1.13 now makes clear that where a non-retroactive change in law is so significant that it has created a gross disparity between an unusually long sentence being served and the sentence a defendant would likely receive today, and the defendant has served at least ten years of the sentence, that may be

2

considered an extraordinary and compelling reason justifying relief. The amended policy statement abrogates *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), and gives this Court the authority to grant Taylor the second chance he has worked tirelessly towards for the past 16 years. We respectfully ask this Court to reduce Taylor's sentence to time served.

## **BACKGROUND**

Darryl Taylor was raised in a stable, two-parent household with seven siblings in Indianapolis, Indiana. He stayed out of trouble at home and in school, and paid rent to his parents after graduating from high school even though they did not ask him to do so. When Taylor was 21 years old, he had a daughter with whom he now speaks almost every day. Prior to his current conviction, he did not have any serious criminal history.

On September 30, 2007, and October 1, 2007, just weeks before the birth of his daughter, Taylor and an accomplice robbed one Indianapolis convenience store and attempted to rob another. In total, a few packs of cigarettes and less than $250 were stolen. And although Taylor had a firearm on his person, no shots were fired and no one was injured during the commission of either of these offenses. The Court noted at sentencing that Taylor's conduct that weekend "was just almost beyond understanding because it's not consistent with anything anyone else knows about you." Dkt. No. 79 (Sent'g Tr.) at 9.

Although initially arrested and charged on state robbery charges that would have carried an approximately six-year prison sentence, Taylor was charged federally with one count of Hobbs Act robbery, one count of attempted Hobbs Act robbery, and two counts under § 924(c). Dkt. No. 1 (Indictment). After a jury trial, he was convicted on all counts and, on June 11, 2009, he was sentenced to a prison term of 37 years—a term the Court described as unreasonable. Dkt. No. 79 (Sent'g Tr.) at 6–7. The robbery and attempted robbery convictions accounted for only 24 months of that term; the remainder was the result of the mandatory, consecutive 10-year term

3

on the first § 924(c) count and the mandatory, consecutive 25-year term on the second § 924(c) count.  Dkt. No. 63 (Judgment).[1]

Taylor is now 37 years old.  He has been in custody for 15 years, with a projected release date of October 18, 2040.  Ex. A, Sentence Monitoring Computation Data, at 3 (Nov. 20, 2023).  During his time in custody, Taylor has accepted responsibility for his prior actions and has consistently worked to improve himself.  He has completed a prodigious amount of programing—approximately 10,000 hours of classes, apprenticeships, and job training programs, Ex. B, Inmate Education Data Transcript (Sept. 10, 2023)—and is prepared to support himself and his family and to meaningfully contribute to his community upon release.  *See* Ex. C, Letter of Support from Amanda Anderson; Ex. D, Letter of Support from Lauren Taylor.

In December 2020, Taylor moved for an order reducing his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the First Step Act, combined with his rehabilitation and young age at the time of sentencing, warranted a reduction.  Dkt. No. 104 (2020 Motion for Sentence Reduction).  The Court denied that motion after explaining that binding Seventh Circuit precedent at the time—*Thacker*, 4 F.4th at 569—prevented it from considering whether a non-retroactive change in law could be an "extraordinary and compelling" reason to reduce Taylor's sentence.  Dkt. No. 133 at 4–5 (Order Denying 2020 Motion for Sentence Reduction).

The Commission's recently-amended policy statement for sentence reductions, § 1B1.13, which is binding on the Court, provides for a sentence reduction based on a change in the law

---

[1]    Separately, Taylor's second 28 U.S.C. § 2255 motion to vacate his sentence is still pending before the Seventh Circuit, where he awaits a ruling on his application for a certificate of applicability.  *Darryl Taylor v. United States*, No. 18-1813 (7th Cir.).  In that motion, he argues that the sentence enhancement for his attempted Hobbs Act Robbery conviction is invalid following Supreme Court decisions in *Johnson v. United States*, 576 U.S. 591, 606 (2015), *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2015 (2022).

under very narrow circumstances like the ones presented here.  The amended policy statement abrogates the Seventh Circuit precedent that bound the Court's decision three years ago and provides an avenue for the Court to correct Taylor's unreasonably long sentence.

## ARGUMENT

The Commission's amended policy statement guides sentence reduction motions in all Circuits and displaces the interim guidance in *Thacker* by making clear that Congress's non-retroactive change to § 924(c)'s sentencing provisions can constitute an extraordinary and compelling reason for a sentence reduction in certain narrow circumstances.  *See* Ex. E, Amends. to the Sent'g Guidelines, at 5.

Specifically, non-retroactive changes in the law are extraordinary and compelling reasons when (a) "a defendant received an unusually long sentence"; (b) the defendant has "served at least ten years of the term of imprisonment"; and (c) "a change in the law . . . would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  § 1B1.13(b)(6).[2]  Taylor is precisely the type of defendant the Commission contemplated when it amended § 1B1.13.  His sentence was unusually long; he has served fifteen years of it; and if sentenced today, he would likely receive a much shorter term of imprisonment.

Those features of Taylor's case, in combination with the other reasons presented in this motion, constitute extraordinary and compelling reasons for a sentence reduction.  Independently of that ground, Taylor's profound transformation while incarcerated, his detailed release plan,

---

[2]    *See* Ex. E, at 11.  All citations to § 1B1.13 are to the policy statement as amended effective November 1, 2023. Official text of the adopted amendments, policy statement, official commentary, and statutory index, as submitted to Congress on April 27, 2023, is available on the United States Sentencing Commission website at: https://www.ussc.gov/sites/default/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

and the strong support from his family and community support a sentence reduction under the "Other Reasons" provision in § 1B1.13(b)(5), and the relevant § 3553(a) sentencing factors weigh strongly in favor of a reduction in sentence to time served.[3]

> **A.    This Court Now Has the Authority to Grant the Relief Requested.**

The amended § 1B1.13 gives this Court the authority it previously concluded it lacked to grant the relief that Taylor requests.  It is the result of a valid exercise, after extensive public comment and hearings, of the Commission's statutory authority—and duty—under 28 U.S.C. § 994(t) to guide courts in determining whether "extraordinary and compelling reasons" warrant a reduction in sentence.  In the wake of the First Step Act, there was no applicable Commission policy statement for prisoner-initiated compassionate release motions, and courts were left to determine on their own the contours of "extraordinary and compelling reasons."  *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020).  Faced with the absence of Commission guidance, the Seventh Circuit in *Thacker* concluded that Congress's non-retroactive changes to the practice of "stacking" enhanced § 924(c) sentences could not constitute an extraordinary and compelling reason.  *Thacker*, 4 F.4th at 575.  But now the Commission, which had lacked a quorum for years, has addressed the issue, and its binding guidance that a non-retroactive change in law *can* in very narrow circumstances constitute an extraordinary and compelling reason abrogates *Thacker*.  This Court thus has the authority to decide that the First Step Act's changes to § 924(c) sentencing, in light of the other features of Taylor's case, presents an extraordinary and compelling reason to reduce his sentence.

---

[3]    Taylor has exhausted his administrative remedies.  Taylor's request for compassionate release was delivered to the Warden of FCI Thomson's mailing address on December 6, 2023. On January 11, 2024, the Warden denied Mr. Taylor's request, *see* Ex. F, and this motion followed.

1. <u>Congress Directed the Commission to Provide Guidance to Courts on "Extraordinary and Compelling Reasons."</u>

The statutory framework for sentence reduction motions makes clear that the Commission's policy statements provide binding guidance on whether a reason can qualify as "extraordinary and compelling." Through § 3582(c)(1)(a)(i), Congress empowered courts to modify a sentence of imprisonment if "extraordinary and compelling reasons warrant such a reduction." As discussed below, Congress specifically directed the Commission to provide guidance for its exercise, and it just as specifically directed district courts to follow that guidance.

Congress intended when it enacted the Sentencing Reform Act of 1984 to authorize sentencing relief for "unusually long sentences" where justified by "changed circumstances," including "extraordinary and compelling circumstances." *See* S. Rep. No. 98–225, at 55 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3238–39. But rather than define "extraordinary and compelling" reasons, Congress directed the Commission to provide the requisite guidance. *See United States v. Green*, No. 2:15-cr-25, 2023 WL 5994140, at *1 (N.D. Ind. Sept. 15, 2023) ("Congress did not define 'extraordinary and compelling reasons' in § 3582(c)(1)(A), instead delegating this task to the Sentencing Commission."). Specifically, 28 U.S.C. § 994(t) directs the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction," including the "criteria to be applied and a list of specific examples." Congress allocated that responsibility to the Commission because it understood that sentencing raises "the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *See Mistretta v. United States,* 488 U.S. 361, 379 (1989). Accordingly, Congress "delegated significant discretion to the Commission to draw judgments from its analysis of existing sentencing practice." *Id.*

The only limitation Congress imposed on the Commission's authority to describe what circumstances can amount to "extraordinary and compelling reasons" was the explicit statement in § 994(t) itself that rehabilitation *alone* could not suffice.  28 U.S.C. § 994(t).  The amended policy statement does not exceed that boundary and thus is a valid exercise of the Commission's authority.

Congress also made clear in the sentence reduction statute itself that courts must act consistently with the Commission's applicable policy statement regarding what can constitute "extraordinary and compelling reasons."  *See* 18 U.S.C. § 3582(c)(1)(A); *see also Gunn*, 980 F.3d at 1180 ("the statute's trailing paragraph . . . says that a reduction must be 'consistent with all 'applicable' policy statements.").  As the Supreme Court recently explained, the provision is an example of "Congress expressly cabin[ing] district courts' discretion by *requiring courts to abide by the Sentencing Commission's policy statements*."  *Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) (emphasis added).

The text of § 994(t) plainly gives the Commission, not the courts, the authority to define what constitutes "extraordinary and compelling reasons."  To conclude otherwise would contravene a direct Congressional command.  The Supreme Court has explained that where Congress delegates authority to an agency to define a term, it "entrusts [the agency], rather than the courts," with the primary responsibility for interpreting that statutory term, and therefore, "a reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner"; instead, it must find that the agency "exceeded its statutory authority."  *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *see also Rush Univ. Med. Ctr. v. Burwell*, 763 F.3d 754, 761 (7th Cir. 2014) ("Once we determine that Congress intended to delegate authority to define a statutory term to an agency, we will give the agency's definition

controlling weight unless it is based on an impermissible construction of the statute.") (internal quotations omitted). The fact that the Seventh Circuit, in the absence of an applicable policy statement, provided different interim guidance does not alter the fact that the expert guidance the Commission has now provided controls.

2.      The First Step Act – Congress Fixes § 924(c) and Removes BOP as the Sentence Reduction Gatekeeper.

Before the First Step Act, the applicable policy statement, § 1B1.13, provided binding guidance to courts on what could constitute "extraordinary and compelling reasons" for compassionate release motions submitted by the BOP. *See United States v. Kurzynowski*, 17 F.4th, 756, 759 (7th Cir. 2021) (recognizing that the original version of § 1B1.13 was "binding" for BOP motions). However, the landscape changed dramatically with the First Step Act, which amended both § 924(c) and the sentence reduction statute, § 3582(c)(1)(A). As the Department of Justice recently acknowledged, the First Step Act "was the culmination of a bipartisan effort to improve criminal justice outcomes and *reduce the size of the federal prison population*, while maintaining public safety."[4]

On the § 924(c) front, Section 403 of the First Step Act clarified that Congress never intended the enhanced, 25-year mandatory consecutive sentences for "second or successive" § 924(c) convictions to apply when those convictions came in the same case as the first such conviction. The law amended § 924(c) so that will never happen again.[5] The amendment was made partially retroactive to offenses committed before the law was passed, but only where the

---

[4]      U.S. Dep't of Just., Off. of the Att'y Gen., *First Step Act Annual Report*, at 4 (April 2023), *available at* https://www.ojp.gov/first-step-act-annual-report-april-2023 (*emphasis added*).

[5]      Separately, as Taylor argues in request for a certificate of appealability concerning his motion to vacate his sentence, a defendant charged with attempted Hobbs Act Robbery does not qualify for a sentence enhancement under 18 U.S.C. § 924(c). *Supra* n.1.

defendant had not yet been sentenced. In other words, it was not made categorically retroactive to the sentences of all inmates serving "stacked" § 924(c) sentences. However, nothing in the language of § 403 prevents courts from considering a change in the law in making the individualized inquiry required for a sentence reduction under § 3582(c)(1)(A). That limitation is a product of decisions such as *Thacker*, not an express directive of Congress.

Prior to the First Step Act, sentence reductions under § 3582(c)(1)(A) were available only on a motion brought by the BOP. The BOP rarely exercised its power to seek relief, and when it did, it filed motions only on behalf of elderly, extremely ill inmates.[6] As a result, a generation of lawyers, judges, and inmates came to believe that "compassionate release" (a term found nowhere in the statute) was hardly ever available, and when it was, it was limited to those narrow circumstances. The First Step Act amended § 3582(c)(1)(A) to allow inmates to file compassionate release motions themselves, even in the absence of BOP support and indeed even if the BOP had affirmatively rejected the inmate's request for a BOP motion. *See Thacker*, 4 F.4th at 572 ("No longer do [prisoners] have to persuade and depend on the [BOP] to bring the motion on their behalf, which rarely happened before the First Step Act.").

3.  For Three-Plus Years, Sentence Reduction Motions Are Decided Without an Applicable Policy Statement.

The First Step Act's creation of a new sentence-reduction mechanism—prisoner-initiated compassionate release motion—created a need for new policy guidance from the Commission. As fate would have it, the First Step Act was signed into law the month before the Sentencing Commission lost its quorum for a period that lasted more than three and a half years. As a result,

---

[6]  *See, e.g.*, U.S. Dep't of Just., Off. of the Inspector Gen., The Fed. Bureau of Prisons' Compassionate Release Program at 11 (Apr. 2013) ("[T]he BOP [did] not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered").

until November 1, 2023, the "Sentencing Commission ha[d] not updated its policy statements to implement the First Step Act" and "the Guidelines Manual lack[ed] an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *Gunn*, 980 F.3d at 1180–81.

While the First Step Act changed the procedure for compassionate release motions, it did not alter the Commission's preexisting authority pursuant to § 994(t) to provide binding guidance on "extraordinary and compelling reasons" for courts in future policy statements. *United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022) ("The First Step Act did not create or modify the 'extraordinary and compelling reasons' threshold for eligibility; it just added prisoners to the list of persons who may file motions."). In other words, the Commission maintained the authority to define "extraordinary and compelling reasons" for prisoner-initiated compassionate release motions, but was not immediately able to exercise that authority.

Thus, when Taylor filed his previous motion for compassionate release in 2020, courts had broad discretion to determine the contours of "extraordinary and compelling reasons" for prisoner-initiated motions because there was no applicable policy guidance. *See United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023) ("[I]n the absence of guidance from the Sentencing Commission, identifying the threshold is committed to the discretion of district judges"); *Gunn*, 980 F.3d at 1180 ("[B]ecause the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion").[7]

In the absence of guidance from the Commission, most circuits, including the Seventh Circuit before *Thacker*, allowed district judges to consider a broad range of issues, including

---

[7]    *See also Thacker*, 4 F.4th at 573 ("[U]ntil the Sentencing Commission update[d] its policy statement to reflect prisoner-initiated compassionate release motions, district courts ha[d] broad discretion to determine what else may constitute extraordinary and compelling reasons.").

non-retroactive changes in sentencing law, when considering whether "extraordinary and compelling reasons" existed. *See United States v. Black*, 999 F.3d 1071, 1075 (7th Cir. 2021) ("Congress's policy choice not to make the changes to § 924(c) categorically retroactive does not imply that district courts may not consider those legislative changes when deciding individual motions for compassionate release like this one.").[8] During this period, district judges around the country, including in this Circuit, demonstrated a hunger to reduce unusually long sentences that had been mandated by the government's use of § 924(c). *United States v. Peoples*, No. 3:98-CR-55(3)-RLM, 2021 WL 2414102, at *6–7 (N.D. Ind. June 14, 2021) (defendant's stacked § 924(c) charges constituted an "unreasonable sentence"), *opinion vacated on reconsideration due to Thacker* (Aug. 23, 2021); *United States v. Rollins*, 540 F. Supp. 3d 804, 808–10 (N.D. Ill. 2021) (reducing "unusually long" sentence comprised of § 924(c) counts); *United States v. Haynes*, No. 4:96-CR-40034, 2021 WL 406595, at *5–6 (C.D. Ill. Feb. 5, 2021) (agreeing with "growing faction of courts" that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief"), *appeal dismissed*, No. 21-1386, 2021 WL 3908914 (7th Cir. May 10, 2021).

Although the Seventh Circuit recognized that district courts had broad discretion to decide compassionate release motions in the absence of an applicable policy statement, the Seventh Circuit concluded in the absence of guidance from the Commission that the First Step Act's change to § 924(c) sentencing could not constitute an extraordinary and compelling reason

---

[8]    *See also United States v. Ruvalcaba*, 26 F.4th 14, 16, 26–28 (1st Cir. 2022) (non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020) (same); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (same); *United States v. McGee*, 992 F.3d 1035, 1046–48 (10th Cir. 2021) (same).

warranting a sentence reduction.  *See Thacker*, 4 F.4th at 576.  This put the Seventh Circuit on one side of a circuit split over whether the First Step Act's amendment of § 924(c) could amount to an "extraordinary and compelling" reason warranting a sentence reduction.[9]

The Seventh Circuit acknowledged that guidance from the Commission would change its interim understanding of the issue.  *See United States v. Williams*, 65 F.4th 343, 345 (7th Cir. 2023) ("Until the Commission definitively says otherwise, we will not deviate from our current understanding."); *cf. Gunn*, 980 F.3d at 1180–81 ("[W]e hope that the Sentencing Commission's ability to revise its guidelines and policy statements will be restored").  The government likewise has recognized that new guidance from the Commission could make *Thacker* moot.  In response to inmate-filed petitions requesting the Supreme Court to resolve the circuit split, the government, relying on *Braxton v. United States*, 500 U.S. 344, 348 (1991), successfully opposed those petitions on the ground that *the Commission* should do so instead.  Br. for the United States in Opp'n to Grant of Cert., *Jarvis v. United States* (No. 21-568), at 19, 20–21.  In successfully preventing Supreme Court review of *Thacker* and other decisions like it, the government explained that the "Commission could promulgate a new policy statement that deprives a decision by this Court of any practical significance."[10]

---

[9]     *Compare Ruvalcaba*, 26 F.4th at 16, 26–28 (holding that non-retroactive changes in sentencing law may be considered in light of a defendant's particular circumstances); *McCoy*, 981 F.3d at 286–88 (same); *Chen*, 48 F.4th at 1098 (9th Cir. 2022) (same); and *McGee*, 992 F.3d at 1047–48 (same), *with United States v. Andrews*, 12 F.4th 255, 260–62 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022) (holding that non-retroactive changes in law are not permissible considerations); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. 2023 June 22, 2023) (same); *United States v. McCall*, 56 F.4th 1048, 1061–62 (6th Cir. 2022) (en banc) (same); *King*, 40 F.4th at 595 (same); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022) (same); and *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022) (same).

[10]    Br. for the United States in Opp'n to Grant of Cert., *United States v. Thacker* (No. 21-877), at 2; *see also* Br. for the United States in Opp'n to Grant of Cert., *United States v. Williams* (No. 21-767), at 2 (same); Br. for the United States in Opp'n to Grant of Cert., *United States v. Watford* (No. 21-551), at 2 (same); Br. for the United States in Opp'n to Grant of Cert., *Jarvis v. United States* (No. 21-568), at 17–20 (same).

4.    <u>The Commission Resolves the Circuit Split and Gives Courts the Authority to Consider a Very Narrow Category of Unusually Long Sentences as Presenting an "Extraordinary and Compelling" Reason to Reduce a Sentence in the Circumstances Presented Here</u>.

The Commission has now provided the guidance Congress instructed it to provide, and in doing so has made clear that certain non-retroactive changes in law can indeed constitute an extraordinary and compelling reason for a reduction in sentence, but only in a narrow set of circumstances.  To echo the government's argument opposing Supreme Court review of *Thacker*, the Commission's new guidance "deprives" existing Seventh Circuit case-law such as *Thacker* "of practical significance."  *See* Br. For the United States in Opp'n to Grant of Cert., *Thacker* (No. 21-877), at 2; *see also United States v. Black*, 815 F.3d 1048, 1056 (7th Cir. 2016) (explaining that the Commission's guidance on what constitutes a "tax loss" under U.S.S.G. § 2T1.1 abrogated an earlier ruling by the Seventh Circuit that excluded courts from considering certain unclaimed deductions when calculating a tax loss under § 2T1.1).  Courts around the country, including within this circuit, have already begun rejecting the government's challenges to the validity of the Commission's authority.  *See United States v. Allen*, No. 1:09-cr-320, 2024 WL 631609, at *5 (N.D. Ga. Feb. 12, 2024) (concluding there is no separation of powers issues impacting the Sentencing Commission's authority); *United States v. Capps*, No. 1:11-cr-00108-AGF, 2024 WL 880554, at *7 (E.D. Mo. Jan. 31, 2024) ("Congress broadly empowered and directed the Commission to issue binding guidance as to what circumstances qualify for potential reduction.  Nothing in the statute's text prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons for a sentence reduction."); *United States v. Brown*, No. 2:95-cr-66(2), 2024 WL 409062, at *5–6 (S.D. Ohio Feb. 2, 2024) ("Congress *did* delegate authority to the Commission to interpret the meaning of the phrase 'extraordinary and compelling.' . . . [I]n this Court's view, § 1B1.13(b)(6) 'does not

even approach these limits of the delegated authority.'" (internal citations omitted)); *United States v. Padgett*, No. 5:06-cr-13 (RH), 2024 WL 676767, at *4 (N.D. Fla. Jan. 30, 2024) (finding that the Sentencing Commission's new amendments have altered what can be considered "extraordinary and compelling" as "Congress explicitly delegated primary responsibility to the Sentencing Commission, whose duly enacted policy statement thus is 'entitled to more than mere deference or weight'" (internal citations omitted)).

The amended policy statement did not only abrogate the holding in *Thacker* that changes to § 924(c) can never be an "extraordinary and compelling" reason for a sentence reduction. The amendments equally placed additional limits on when Courts could consider non-retroactive changes in the law as a basis for sentence reductions, effectively abrogating circuit court decisions on both sides of the previously existing circuit split. *See United States v. Boyer*, No. 1:14-cr-00035, 2023 WL 8927607, at *2 (N.D. Ind. Dec. 26, 2023) ("The case law debate has been mooted by the passage of time. On November 1, 2023, long-adopted amendments to U.S.S.G. § 1B1.13 went into effect."). In resolving the circuit split, the Commission looked to the guidance of courts on both sides of the argument and fashioned a provision stating that non-retroactive changes in the law "may be considered in determining whether the defendant presents an extraordinary and compelling reason," but only under certain limited circumstances. § 1B1.13(b)(6); *see also* Ex. E, at 6 (the Commission "adopt[ed] a tailored approach that narrowly limits that principle in multiple ways"). Specifically, such a change in law may present an "extraordinary and compelling reason" only when: (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. § 1B1.13(b)(6). Other than

in these narrow circumstances, a court may consider a non-retroactive change in the law only for the purpose of determining the degree of a reduction in a sentence where extraordinary and compelling reasons have been otherwise established. § 1B1.13(c). In this respect, the amended policy statement aligns with *Thacker's* view that nonretroactive changes in the law should not generally provide a basis for relief under § 3582(c)(1)(A).

     5.       The Court is No Longer Bound by *Thacker's* Interim Guidance.

Because the Commission has adopted a policy statement that abrogates *Thacker*, this Court has the authority to consider whether Taylor meets the Commission's criteria. Recent decisions by this Court have questioned (without deciding) "whether the Sentencing Commission exceeded its authority when it added [changes in the law] to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Young*, No. 110-CR-00003 (SEB) (MJD), 2024 WL 554276, at *4 (S.D. Ind. Feb. 9, 2024); *United States v. Tinsley*, No. 117-CR-00064 (SEB) (MJD), 2024 WL 181704, at *3 (S.D. Ind. Jan. 17, 2024); *United States v. Nunez*, No. 104-CR-00161 (SEB) (DKL), 2024 WL 51189, at *3 (S.D. Ind. Jan. 3, 2024). But "before a judicial construction of a statute, whether contained in a precedent or not, may trump [the Commission's], the court must hold that the statute unambiguously requires the court's construction." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 985 (2005). *Thacker* made no such holding, nor could it have done so. As the Seventh Circuit explained in *Rush University Medical Center*: "When a statute specifically authorizes an agency to define a term, there is no need to consider whether the term is ambiguous and thus left to agency delegation. The logical assumption is that Congress thought there was work for the agency to do—namely, to define the [term]." 763 F.3d at 760.

The statutory interpretation expressed in *Thacker*—a Circuit decision issued to fill a void in the absence of an applicable policy statement—cannot override the Commission's

congressionally-delegated authority to describe the term "extraordinary and compelling," nor can it preclude the Commission from issuing a conflicting policy statement. *See Black*, 815 F.3d at 1056; *see also Brand X Internet Servs.*, 545 U.S. at 982–83 ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."); *Batterton*, 432 U.S. at 425 ("A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner."). Put differently, *Thacker* and its progeny no longer have any binding effect on this Court. *Thacker* and its progeny were decided at a time when there was no applicable policy statement, and there was a circuit split on the interpretation of "extraordinary and compelling." Only a finding by the U.S. Supreme Court that the consideration of non-retroactive changes in the law "bears no relationship to any recognized concept of [extraordinary and compelling]" would displace the Commission's amendments describing those terms and providing for consideration of non-retroactive changes in the law under the narrow circumstances outlined in (b)(6). *See Batterton*, 432 U.S. at 428; *Rush Univ. Med. Ctr.*, 763 F. 3d at 761. And the Supreme Court has not weighed in on this question because, as discussed above, the government successfully encouraged it not to. One would think that if the government actually believed the Commission lacked the authority to resolve the circuit split, it would never have urged the Supreme Court to refrain from resolving it in favor of the Commission doing so. *See United States v. Martinez*, No. 2:01-cr-00564-TC, 2024 WL 866822, at *5 (D. Utah Feb. 29, 2024) ("The government's position in this case contradicts its previous position that the circuit split should be resolved by the Sentencing Commission. Indeed, in issuing this guidance, the Sentence Commission opined on the circuit split because it typically resolves such disagreements when they relate to its guidelines or policy statements." (internal

quotation marks and citations omitted)).  In any event, the Commission, acting pursuant to and within its statutory mandate, resolved the circuit split, and Taylor is precisely the type of defendant the Commission's amended policy statement contemplates.  *See Brown*, 2024 WL 409062, at *5 ("[Section] 1B1.13(b)(6) does not even approach these limits of the [Commission's] delegated authority" (internal quotation marks omitted)).  *Thacker* no longer stands in the way to this Court granting relief.[11]

**B.    Extraordinary and Compelling Circumstances Warrant a Reduction in Taylor's Sentence**.

Under the § 1B1.13 of the U.S. Sentencing Guidelines, Taylor's unusually long sentence, the gross disparity created by his stacked § 924(c) charges, his young age at the time of the offenses and lack of criminal history, his family support and strong release plan, and his exemplary rehabilitation record constitute extraordinary and compelling reasons warranting a sentence reduction to time served.  And although rehabilitation cannot, standing alone, constitute an extraordinary and compelling reason, rehabilitation may be considered in conjunction with other reasons to meet the threshold.  U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in

---

[11]    The only district court in this Circuit to address this question correctly concluded that "'extraordinary and compelling' is ambiguous, so the Seventh Circuit's interpretation of that term does not prevent the Commission from construing that term differently." *United States v. Black*, No. 05 CR 70-4, 2024 WL 449940, at *8 (N.D. Ill. Feb. 6, 2024) (citing *Brand X Internet Servs.*, 545 U.S. at 982–83).  However, applying the second part of the test outlined in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984), the court held that subsection (b)(6) was an "unreasonable" interpretation of § 3582(c) in light of *Thacker's* holding that the non-retroactive change to § 924(c) could not be "extraordinary and compelling," and therefore *Thacker* still controlled.  *See id.*  But this holding misses the mark in two important respects.  *First*, *Brand X* makes clear that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only if* the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." 545 U.S. at 982.  *Second*, the proper question here is not whether the Commission's interpretation of § 3582(c)(1)(A) was "reasonable."  As discussed above, where Congress delegates to an agency the authority to define a statutory term, the agency's definition is controlling unless it exceeds the "limits of the delegated authority." *Batterton*, 432 U.S. at 428; *see also Brown*, 2024 WL 409062, at *5.

determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").[12]

        1.     <u>Taylor's Unusually Long Sentence, Combined with His Ten-Plus Years Served and the Dramatic Disparity Caused by a Nonretroactive Change in Law Presents an Extraordinary and Compelling Reason for Relief Under Subsection (b)(6).</u>

Taylor meets all three criteria that § 1B1.13(b)(6) requires for a defendant's unusually long sentence to constitute an extraordinary and compelling reason for a sentence reduction. As previously discussed, courts may now consider a non-retroactive change in sentencing law to be an extraordinary and compelling reason when (1) the defendant is serving an unusually long sentence; (2) the defendant has served at least 10 years of that sentence; and (3) an intervening change in the law has produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6).

*First*, Taylor's 37-year sentence, for offenses in which no one was physically harmed and little was stolen, is indisputably "unusually long." Between fiscal years 2013 and 2022, "fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer." Ex. E, at 6. And in fiscal year 2022, the average sentence imposed for post-First Step Act federal robbery offenders also convicted of a § 924(c) charge was approximately 12.5

---

[12]    *See also United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (agreeing that "'there is no indication that successful rehabilitation efforts may not be considered as one among other factors' warranting a reduced sentence under § 3582(c)(1)(A)") (citing *McCoy*, 981 F.3d at 286 n. 9); *United States v. Logan*, No. 07 CR 270-2, 2023 WL 2771165, at *6 (N.D. Ill. Apr. 4, 2023) ("[E]ven if the [sentencing disparity] issue discussed in the previous section is insufficient in and of itself to constitute an extraordinary and compelling reason warranting consideration of compassionate release, it qualifies when combined with Logan's rehabilitation."); *United States v. Williams*, No. 06 CR 50055-(1), 2020 WL 6940788, at *4 (N.D. Ill. Nov. 25, 2020) (considering sentencing disparity created by § 924(c) sentencing changes in combination with rehabilitation in granting motions for compassionate release).

years.  U.S. Sent'g Comm'n, *Quick Facts Robbery Offenses*, 1 (Aug. 2023).[13]  Taylor's sentence, by contrast, is over 27 years longer than 88% of all other defendants sentenced in the last decade, *see* Ex. E, at 6, and more than quadruple the average sentence imposed for federal robbery offenders in fiscal year 2022.  U.S. Sent'g Comm'n, *Sourcebook of Federal Sentencing Statistics* tbl. 15 (2022) (average sentence for robbery nationwide was 106 months).  Of defendants convicted under § 924(c) in 2022, less than 0.1% were sentenced to more than 30 years in prison.[14]  Courts in this circuit have confirmed the obvious: that stacked § 924(c) sentences like Taylor's are unusually long.[15]

    *Second*, Taylor has served 15 years in prison.

    *Finally*, two intervening changes in the law have produced a "gross disparity" between Taylor's current sentence and the sentence he would likely receive today.  Taylor received a 37-year sentence, driven by the mandatory and consecutive 35 years he received for his two "stacked" § 924(c) counts.  This Court recognized that it was "almost impossible" to craft a reasonable sentence because the law allowed federal prosecutors to stack a 25-year mandatory minimum to a second conviction in a single prosecution.  Dkt. No. 79 (Sent'g Tr.) at 2:9–14.

---

[13]    *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Robbery_FY22.pdf.

[14]    U.S. Sent'g Comm., *FY22 Quick Facts on 18 U.S.C. § 924(c) Firearms Offenses*, 2 (April 2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Section_924c_FY22.pdf.

[15]    *See United States v. Sparkman*, No. 09-cr-0332-07, 2020 WL 6781793, at *8 (N.D. Ill. Nov. 18, 2020) (concluding that a 30-year mandatory minimum for two stacked § 924(c) counts was "far greater than necessary" and was "profound[ly] excessive[]");  *Haynes*, 2021 WL 406595, at *6 ("While Defendant's multiple armed robbery crimes were undeniably serious, the Court doubts any reasonable person would suggest they are deserving of a sentence 5 times the length of the average sentence for murder."); *Rollins*, 540 F. Supp. 3d at 808–10 (concluding that sentence of four stacked § 924(c) counts was, "beyond dispute" an "unusually long" sentence, that was "grossly excessive, especially because nobody was physically injured during the robberies").

In 2018, the First Step Act eliminated the ability of federal prosecutors to "stack" enhanced § 924(c) penalties in a defendant's first § 924(c) case. *See* First Step Act of 2018, § 403(a), 132 Stat. 5194, 5222. Taylor would no longer receive a mandatory 25-year consecutive sentence for the second § 924(c) count. At most, his mandatory minimum sentence would be 20 years—17 less than his current sentence.

In *United States v. Davis*, the Supreme Court held that the residual clause of § 924(c) is unconstitutionally vague. 139 S. Ct. at 2336 (2019). In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery cannot constitute a crime of violence and under the force clause of § 924(c), and so, with *Davis*, attempted Hobbs Act robbery can never serve as a predicate for a §924(c) conviction. *Taylor*, 142 S. Ct. at 2025. Accordingly, had Taylor been sentenced today, he would face a mandatory minimum of—at most—10 years on *one* § 924(c) count,[16] making his likely prison sentence 12 years (10 years on one § 924(c) count and 2 years on the underlying robberies). These significant changes in law have created the gross disparity between the sentence Taylor is serving and the one he would likely receive today, and that is consistent with decisions of other courts in this circuit and across the country that disparities like Taylor's warrant a reduction in sentence.[17]

---

[16] The Supreme Court nullified the use of attempted Hobbs Act robbery as a sufficient predicate for a § 924(c) conviction. *Taylor*, 142 S. Ct. at 2020–21.

[17] *See, e.g.*, *Williams*, 2020 WL 6940788, at *3 (concluding that 18-year difference between sentence received and "the sentence Congress has now deemed warranted for the second § 924(c) conviction supports finding an extraordinary and compelling reason for a sentence reduction"); *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020) (concluding that 18-year difference in mandatory § 924(c) sentences before and after the First Step Act was a "significant" disparity contributing to extraordinary and compelling circumstances warranting sentence reduction); *United States v. Shaw*, No. 5:13-CR-00025, 2021 WL 300726, at *5 (W.D. Va. July 15, 2021) (concluding a 22-month sentencing disparity constitutes an extraordinary and compelling reason warranting a sentence reduction); *United States v. Griner*, Crim. No. 07-160 PJM, 2023 WL 2025079 , at *2 (D. Md. Feb. 14, 2023) (concluding that a 7.5-year sentence disparity "constitutes an 'extraordinary and compelling' circumstance" warranting a sentence reduction); *United States v. Glover*, No. 8:07-CR-00960-JMC-15, 2022 WL 3025753, at *5 (D.S.C. Aug. 1, 2022) (concluding a

In short, Taylor is a perfect example of the kind of defendant the Commission envisioned when expanding the definition of "extraordinary and compelling reasons" to include certain narrowly-cabined unusually long sentences.  A sentence reduction to time served would diminish the injustice that resulted from his stacked § 924(c) convictions as well as the disparity between his sentence then and the one he would likely receive today.

> 2.  Taylor Has Presented Sufficient and Independent Grounds for Relief Under Subsection (b)(5)'s "Other Reasons" Provision.

Separate and apart from the "unusually long sentence" provision of the Commission's new guidance, there is another basis for determining that Taylor's case presents extraordinary and compelling reasons warranting a reduction in sentence.  The amended § 1B1.13 provides in subsection (b)(5) that reasons other than, but similar in gravity to, the specified ones (old age, medical condition, extraordinary family circumstances, and sexual abuse in prison), may constitute extraordinary and compelling reasons for relief.    § 1B1.13(b)(5).    And the Commission's stated "Reasons for Amendment" specifically placed its imprimatur on the reasons on which district judges around the country based sentenced reductions in the nearly four-year period between the First Step Act and the effective date of the amendments to § 1B1.13.[18]  Those included the length of the sentence in relation to the underlying offenses, relative youth at the time of the offenses of conviction, his exemplary rehabilitation and his strong family support and release plan.

---

74-month sentencing difference constitutes an extraordinary and compelling reason warranting a sentence reduction).

[18]    "The Commission recognized that during the period between the enactment of the First Step Act in 2018 and this amendment, district courts around the country based sentence reductions on dozens of reasons and combinations of reasons.  Based on a careful review of those cases, the Commission continues to believe what is stated in Application Note 4 to the current policy statement, *i.e.*, that judges are 'in a unique position to determine whether the circumstances warrant a reduction.'" Ex. E, at 5.

a.    *The Court May Consider the Length of Taylor's Sentence under Subsection (b)(5).*

The plain language of § 1B1.13(b)(5) allows this Court to consider the length of a Taylor's sentence in evaluating whether a combination of circumstances, taken together, warrants a reduction of his sentence.    After identifying four specific circumstances in § 1B1.13(b)(1)–(4) (medical circumstances, age, family circumstances, and sexual or severe physical abuse), § 1B1.13(b)(5) includes a catchall provision stating that extraordinary and compelling reasons may exist when a defendant presents "*any other circumstance* or combination of circumstances."  (emphasis added).  This language could not be broader, and there is no reason to believe that Taylor's lengthy sentence, separate and apart from the sentencing disparity created by the stacked § 924(c) convictions, cannot be among the circumstances the Court may consider.[19]

Indeed, Taylor's sentence is not the product of rote application of mandatory sentencing provision but rather the result of extraordinary prosecutorial discretion that saw a first time

---

[19]    *See, e.g.*, *United States v. Robinson*, No. 89-cr-908, 2022 WL 4119800, at *5 (N.D. Ill. Sept. 9, 2022) (finding, post-*Thacker*, that defendant being "incarcerated for a remarkably long time" was a "factor[] favor[ing] compassionate release"); *United States v. Kerby*, No. 8:02-cr-336, 2022 WL 16837039, at *9 (D. Neb. Nov. 9, 2022) (considering, as part of extraordinary and compelling analysis, excessive sentence resulting from plea bargain that was reached "against the backdrop of the mandatory sentencing Guidelines," whereas, post-*Booker*, the defendant would have greater "bargaining leverage," and finding *Crandall* does not categorically bar consideration of sentence length); *United States v. Littles*, No. 1:98-cr-056, 2022 WL 4473609, at *4 (M.D. Pa. Sept. 26, 2022) (considering as an extraordinary and compelling reason, post-*Andrews*, the defendant's "extended sentence"—that is, a "decades-long sentence for a drug-related crime imposed under the mandatory guidelines scheme"—combined with defendant's advance age, pre-existing conditions, and exemplary conduct while incarcerated); *see also United States v. Reyes*, No. 04-cr-970, 2020 WL 1663129, at *2, *5 (N.D. Ill. Apr. 3, 2020) (finding that "because [defendant] has served most of his sentence already," and seeing "no evidence in the text that the catch-all provision is so constricted," the court considered the defendant's "excessive sentence [as] an individual and personal circumstance"); *United States v. Adams*, 512 F. Supp. 3d 901, 913 (E.D. Mo. 2021) (finding that because defendant's career offender designation "overstates his criminal history and the gravity of his single prior felony," such an "overly harsh sentence[] and sentencing disparities [are] factors contributing to 'extraordinary and compelling reasons'").

offender who was initially charged with an offense that would have likely resulted in a state sentence of six years (with possibility of parole)[20] subjected instead to federal charges that resulted in a mandated 37-year sentence.  Taylor's 444-month sentence reflects an extraordinary choice by the government: to charge Taylor in a manner that would result in an unusually long sentence.[21]  This Court questioned the reasonableness of those charges at sentencing but was bound by settled law to impose an indefensible sentence.  Dkt. No. 79 (Sent'g Tr.) at 9.  Section 1B1.13(b)(5) of the amended policy statement allows the Court to consider this lengthy sentence—longer than 99.9% of all federal sentences—to determine whether, apart from the change in the law, Taylor's unusually long sentence qualifies for relief.

> b.  *Taylor's relative youth at the time of his offense, in combination with other factors, is an extraordinary and compelling reason for sentence reduction.*

Taylor's relative youth (age 21) at the time he committed his crimes is an additional factor demonstrating extraordinary and compelling reasons for a sentence reduction.  Section 1B1.13(b)(5) now expressly recognizes, and allows this Court to consider, *cf.* Dkt. No. 133 at 6,

---

[20]  *See* Ind. Code § 35-50-2-1(c)(3) (2009) (imposing a sentence of 6 years to 20 years for Class B Felony Robbery); Ind. Code § 35-50-2-1(c)(5) (2009) (sentence of 6 months to 2.5 years for felony involving a sawed-off shotgun); Ind. Code § 35-50-3-1(b) (2009) (sentence of "not more than 1 year" for carrying a handgun without a license).

[21]  Other courts in this Circuit have found that an unusually long sentence due to prosecutorial decision-making could be extraordinary and compelling.  *See Logan*, 2023 WL 2771165, at *4 (concluding that a now disavowed prosecutorial practice producing large sentences based on stash house raids constitutes an extraordinary and compelling reason warranting a sentence reduction); *United States v. White*, No. 09 CR 687-4, 2021 WL 3418854, at *4 (N.D. Ill. Aug. 5, 2021) (concluding that a 25-year mandatory sentence based on stash house raids and now abandoned prosecution policies constitutes an extraordinary and compelling reason); *United States v. Conley*, No. 11 CR 0079-6, 2021 WL 825669, at *4 (N.D. Ill. Mar. 4, 2021) (concluding that a 15-year minimum sentence based upon the government's arbitrary amount of cocaine found in a fake stash house constitutes an extraordinary and compelling reason warranting a sentence reduction); *United States v. Liscano*, No. 02 CR 719-16, 2021 WL 4413320, at *4–7 (N.D. Ill. Sept. 27, 2021) (concluding that a sentencing disparity resulting from the way a prosecutor charged the defendant for exercising his right to trial constituted extraordinary and compelling reasons) *abrogated on other grounds by United States v. Brock*, 39 F.4th 462 (7th Cir. 2022).

that reasons other than those specified in § 1B1.13 can qualify a defendant for a sentence reduction if they are of similar gravity to the specified reasons. U.S.S.G. § 1B1.13(b)(5). In addition to recognizing age as a potentially relevant reason for sentence reduction, the Commission's "Reason for Amendment" explains that the fact that a defendant's offenses "occurred when the defendant was in his late teens or early twenties"—as Taylor was—can qualify as a further reason for a sentence reduction when combined with rehabilitation. Ex. E, at 7.

Neuroscience research since Taylor was sentenced has established that the brain— including the regions responsible for self-control and judgment—continues to develop into a person's mid-to-late twenties. In a study funded by the DOJ, researchers opined that "adolescents and young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses" and concluded that policymakers should implement a "categorical rule of youthfulness as a mitigating factor in sentencing."[22] As the scientific community's understanding of how young people's brains has advanced, courts around the country have recognized that a defendant's relative youth can be an extraordinary and compelling reason for a sentence reduction.[23] Similarly, this Court can and should weigh Taylor's age in favor of relief.

---

[22]  James C. Howell et al., *Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* 18, 29 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf.

[23]  *See McCoy*, 981 F.3d at 286 (describing "defendants' relative youth – from 19 to 24 years old – at the time of their offenses" as "a factor that many courts have found relevant under § 3582(c)(1)(A)(i)"); *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (recognizing that "Congress seemingly contemplated that courts might consider" a defendant's "age at the time of his crime . . . in favor of a sentence reduction"); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821 (10th Cir. 2021) (finding that, *inter alia*, defendant's age (20 years old at time of arrest and 24 years old at time of sentencing) could be an extraordinary and compelling reason for sentence-reduction); *United States v. Johnson*, No. 1:97-CR-314-AJT, 2023 WL 5049267, at *5–6 (E.D. Va. Aug. 8, 2023) (concluding that

        c.      *Taylor's Exceptional Rehabilitation, in Combination with the Other Factors Discussed Above, Supports a Finding of Extraordinary and Compelling Reasons for Relief.*

While Taylor's unusually long sentence is, standing alone, an extraordinary and compelling reason for relief, Taylor's rehabilitation provides further confirmation that he qualifies for a sentence reduction. Just like others who have received reduced sentences in this circuit, Taylor "has taken advantage of every opportunity to not only better himself but also to positively impact others" and "demonstrated a commitment to securing gainful employment upon release and denouncing his past life of unlawful activity." *Logan*, 2023 WL 2771165, at *6.[24] Indeed, this Court has already recognized Taylor's "good conduct and his efforts at rehabilitation." Dkt. No. 133 at 6.

---

defendant's age (20 years old at time offences began, 25 years old at time of arrest) "weighs in favor of relief"); *United States v. Harris*, No. CR 97-399-1, 2020 WL 7861325, at *1, *6 (E.D. Pa. Dec. 31, 2020) (defendant's "young age at the time of the offenses" (24 years old) contributed to establishment of extraordinary and compelling circumstances); *United States v. Fowler*, 544 F. Supp. 3d 764, 766 (N.D. Tex. 2021) ("[T]he Court is mindful of the fact that at the time Fowler's offenses herein were committed, he was only twenty-five years old"); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020) (concluding that defendant was eligible for sentence reduction based on, *inter alia*, defendant's relative youth (24 years old at time of sentencing)); *United States v. Steward*, No. 1:95-CR-05111-JLT, 2022 WL 1645087, at *4 (E.D. Cal. May 24, 2022) (taking into account young age of defendant who was "only 21 years old at the time of the robberies"); *United States v. Williams*, No. CR 91-559-6 (TFH), 2021 WL 5206206, at *8 (D.D.C. Nov. 9, 2021) (taking into account defendant's relative youth (23 years old at time of sentencing)).

[24]   *See also, e.g.*, *Peoples*, 41 F.4th at 842 (agreeing that "'there is no indication that successful rehabilitation efforts may not be considered as one among other factors' warranting a reduced sentence under § 3582(c)(1)(A)") (quoting *McCoy*, 981 F.3d at 286 n. 9); *United States v. Spagnola*, No. 07 CR 441-2, 2023 WL 5004396, at *4 (N.D. Ill. June 22, 2023) (concluding that defendant's "commendable" rehabilitation, evidenced by consistent employment in position "available only to inmates who exhibit a degree of reliability and responsibility" and the absence of any recent significant disciplinary infraction, supported sentence reduction); *United States v. Ward*, No. 09 CR 687-3, 2023 WL 5004408, at *4 (N.D. Ill. June 22, 2023) (same); *United States v. Chan*, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020) (considering "rehabilitation efforts in combination with the amendments to Section 924(c)'s stacking provisions" to demonstrate extraordinary and compelling circumstances); *Bellamy v. United States*, 474 F. Supp. 3d 777, 786 (E.D. Va. 2020) ("Petitioner's rehabilitative efforts assist in forming an extraordinary and compelling basis for relief."); *United States v. Marks*, 455 F. Supp. 3d 17, 25–26 (W.D.N.Y. 2020) ("Several courts have recently ruled that the *combination* of changes to the 'stacking' provisions of

Taylor has completed more than 115 educational courses, job training programs, and apprenticeships—totaling approximately than *10,000* hours.  *See* Ex. B.  Because of this programming, he has developed job skills in culinary arts, plumbing, carpentry, computers, electrical, housekeeping, and office management, which have prepared him to reenter the workforce and reduce his likelihood of reoffending upon release.[25]

Taylor also has an extensive work history, holding steady jobs "with a multitude of responsibilities" for the past two decades.  Summary Reentry Plan – Progress Report, Dkt. No. 104-1 at 1; Ex G, Inmate History – Wrk (sic) Detail (Nov. 20, 2023).  He currently works at the commissary at FCI Thomson, and he has a job offer to work at a restaurant in Indianapolis upon release.  Ex. C.

While incarcerated, Taylor has not only undergone remarkable rehabilitation, bettering himself through education and work opportunities, but he has also spent significant time developing his faith and contributing to his church community.  Indeed, if released, Taylor plans to join his father's church and mentor the young people at Paraclete Life Missionary Baptist Church.  Taylor is, by all accounts, a different man than he was when he was arrested over 16 years ago.

---

§ 924(c), coupled with the defendant's rehabilitation, establish extraordinary and compelling conditions warranting a sentence reduction.").

[25]  A DOJ-funded study confirms that inmates like Taylor who participate in correctional education programs have 43 percent lower odds of returning to prison than those who did not.  U.S. Dep't of Just., *Prison Reform: Reducing Recidivism By Strengthening The Federal Bureau of Prisons* (last updated Mar. 6, 2017), https://www.justice.gov/archives/prison-reform (citing Lois M. Davis, et al, *Evaluating the Effectiveness of Correctional Education*, RAND Corporation 32 (2013), p. xvi).

> d.    *Taylor's significant family support and strong release plan are additional factors favoring relief under Subsection (b)(5).*

Taylor's family support at home and strong release plan further supports a finding of extraordinary and compelling circumstances warranting his release.[26]  Numerous letters of support from his family and friends paint a picture of a community ready to welcome Taylor home and support him.  *See* Ex. D (stating that Taylor could stay with her once released, and describing that Taylor's influence on their family and her children "has been immeasurable"); Ex. H, Letter from Jonathan Ockletree (describing the "meaningful relationships" that Taylor has established with "his child, nieces, nephews, sisters, brothers and many other family members"); Ex. I, Letter from Janea Reaves (describing Taylor as always exhibiting "kindness, empathy, and a willingness to help those in need"); Ex. J, Letter from Daughter.

Despite being faced with 37 years in prison, Taylor has remained, in his sister's words, "the backbone of our close-knit family."  Ex. D.  Throughout his incarceration, he has been committed to fostering his bonds with his daughter, who was born shortly after his arrest.  Taylor maintains a very good relationship with his daughter who is now 16, and she longs to be reunited with her father so that she can benefit from his guidance and so that she can help him reintegrate into society.  Ex. J.  Taylor has also maintained a strong relationship with his sister, Lauren Taylor, who has offered Taylor a place to live upon his release and is "ready to support him on his journey toward rehabilitation."  Ex. D.  Taylor lost his mother in 2017 and despite his own grief, "selflessly supported and guided [his family] through the grieving process."  *Id.*  He also

---

[26]    *See United States v. Steele*, No. 10-20037-01-JWL, 2021 WL 2711176, at *3 (D. Kan. July 1, 2021) (granting relief in part because of the "strong family support that defendant will experience upon release); *United States v. Rogers*, No. CR-13-15-BU-BMM, 2023 WL 121224, at *3 (D. Mon. Jan. 6, 2023) (granting relief in part because of "strong family support").

has a strong relationship with his father and hopes to help his father with his church ministry upon his release.

In addition to the incredible support of his loving family, Taylor also has a strong release plan that includes a job offer from a local restauranteur in Indianapolis. Ex. C ("We are confident that Mr. Taylor will benefit from the structure and responsibility that employment provides, contributing positively to his reintegration process. Our team is prepared to assist him in his professional development and personal growth."). The remarkable family and community support that Taylor will have upon his release provides yet another extraordinary and compelling reason for release.

For all the reasons set forth above, extraordinary and compelling reasons exist qualifying Taylor for a sentence reduction to time-served.

C.    **The § 3553(a) Factors Support a Sentence Reduction, and Taylor Poses No Danger to the Public**.

Section 1B1.13 allows a judge to reduce a defendant's sentence if, after considering "the factors set forth in 18 U.S.C. § 3553(a)," the court determines that "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(a); *see Kurzynowski*, 17 F.4th at 759 (noting that, once an extraordinary and compelling reason is established, the court should consider whether "release [is] appropriate under § 3553(a)"). The Supreme Court has recognized that when applying the § 3553(a) factors, a defendant's post-sentencing conduct "provides the most up-to-date picture of [a defendant's] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting § 3553(a)(1)); *see also United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020) ("[C]onduct after sentencing is plainly relevant to the history and characteristics of the defendant; pertinent to the need for the sentence imposed; and may critically inform a sentencing judge's overarching

duty under § 3553(a) to impose a sentence sufficient, but not greater than necessary, to comply with the sentencing purposes set forth in § 3553(a)(2).") (internal quotations omitted). The text of § 3142(g) likewise requires courts to evaluate a defendant's dangerousness based on their *present characteristics*, by directing courts to consider "the nature and seriousness of the danger to the person or the community *that would be posed* by the person's release." 18 U.S.C. § 3142(g) (emphasis added). Taylor's present characteristics clearly establish that the § 3553(a) factors weigh heavily in favor of relief and that he is not a danger to society.

### 1.    The Relevant § 3553(a) Factors Weigh Heavily in Favor of Relief

Taylor's rehabilitation and sustained commitment to his family and prison community not only constitute extraordinary and compelling reasons warranting a sentence reduction, but also weigh heavily in favor of a reduction to time served.[27] Though Taylor's crimes were serious, and nothing in this memorandum is intended to suggest otherwise, he has accepted full responsibility for and is deeply remorseful for his actions and the pain he caused to both his victims and his family. Taylor has already been subjected to very serious punishment for his crimes. He has served over 15 years in prison, which is more than enough time to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

As described above, Taylor has dedicated himself to rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." He is an active member of the

---

[27] *See Brown,* 2020 WL 4569289, at *7 (recognizing the "thoroughly documented changes" in the defendant's character and life as justification for granting sentence reduction); *Spagnola*, 2023 WL 5004396, at *4 (noting defendant's "marked improvement while incarcerated" and his "ability to cultivate responsible behaviors" as demonstrated through his employment as reasons for granting sentence reduction).

church community in prison, often playing drums for the church.[28]  In addition, Taylor has had only three discipline violations in the past ten years, none of which were violent, and no violations in the past three years, Ex. K, Inmate Discipline Data – Chronological Disciplinary Record (Nov. 20, 2023), and he has been classified as a "low risk" for recidivism.  Ex. L, FSA Recidivism Risk Assessment, at 1 (May 3, 2023).  He also has maintained a strong relationship with his family, who will support Taylor upon his release, Ex. M, Male Custody Classification Form (Apr. 28, 2023) (receiving highest family/community ties score), and he has tangible offers for both housing and employment as part of his detailed release plan.[29]

2.    <u>Taylor is Not a Danger.</u>

Taylor, now 37 years old, does not pose a danger to himself or the community if released. While he engaged in serious criminal behavior at the young age of 21, neuroscience research supports the conclusion that violence at such an early age is not a good predictor of future recidivism.  And according to findings published by the Commission, the data on older age at

---

[28]    *See* Richard Stansfield & Thomas J. Mowen, *Religious Involvement, Moral Community and Social Ecology: New Considerations in the Study of Religion and Reentry*, 35 J. Quantitative Criminology 493 (2019) (highlighting the correlation between religious involvement and lower recidivism).

[29]    Courts have regularly identified detailed release plans that include family support and offers of housing and employment, as is the case here, as weighing heavily in favor of a sentence reduction. *See United States v. Norris*, No. 1:08-cr-00170, 2020 WL 6583084, at *5 (S.D. Ind. Nov. 10, 2020) (noting that the defendant "presented a promising and viable release plan" indicating his intent "to reside with his sister" with "financial support from his daughter," and finding that "these circumstances promise a level of stability that will facilitate his law-abiding reentry to society with a peaceful assimilation into the community"); *United States v. Harris*, No. 06 CR 586, 2023 WL 6847104, at *4 (N.D. Ill. Oct. 17, 2023) (noting as a reason for granting sentence reduction the defendant's "thorough release plan which includes his intended employment in the trucking industry" and aspirations "to volunteer for the 6x6 Brotherhood Foundation, a program designed to help young men focus on their education and futures"); *United States v. Santilli*, No. 18 CR 357-1, 2020 WL 6446665, at *3 (N.D. Ill. Nov. 3, 2020) (finding that defendant's "concrete release plan" supports early release because he will be living in Arkansas "away from the influences in the Chicagoland area that led him to drug use and crime" and also has a job offer from his brother for "stable, fulltime employment").

time of release is clear: "the older the age group, the lower the rearrest rate. The same pattern holds for reconviction and reincarceration."[30]

Recent scientific findings on young offenders underscore two important points. First, Taylor's mistakes as a young offender are likely not an indication of an indelible personality trait.[31] Second, there is every reason to believe that Taylor has a dramatically reduced disposition toward criminal behavior. The BOP's own assessment of Taylor's recidivism risk supports these conclusions. Ex. L.

Taylor has worked tirelessly to turn his life around, and his rehabilitation, extensive family support system, and his continued commitment to learning demonstrate his ability to swiftly reintegrate into society. He has done everything in his power to earn a second chance before his projected release date in 2040. And the Sentencing Commission, fulfilling the duty imposed on it by Congress, has now authorized this Court to bring a measure of justice to an excessive sentence that it was forced to impose years ago. This Court has the opportunity to give him decades of his life back, and we respectfully suggest he has earned that opportunity.

---

[30]  U.S. Sent'g Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 23, Fig. 11 (2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[31]  *See, e.g.*, BJ Casey et al., *How Should Justice Policy Treat Young Offenders?: A Knowledge Brief of the MacArthur Foundation Research Network on Law and Neuroscience* 2 (Feb. 2017).

## **CONCLUSION**

We respectfully urge the Court to use the authority conferred by the First Step Act and the Sentencing Commission's recent amendment to § 1B1.13 to reduce Taylor's sentence to time served.

Dated: March 5, 2024                    Respectfully Submitted

                                        */s/    John Gleeson*
                                        John Gleeson (*admitted pro hac vice*)
                                        Ardis Strong (*admitted pro hac vice*)
                                        Nicole Flores (*admitted pro hac vice*)
                                        DEBEVOISE & PLIMPTON LLP
                                        66 Hudson Blvd.
                                        New York, NY 10001
                                        (212) 909–6000 (phone)
                                        (212) 909–6836 (fax)
                                        jgleeson@debevoise.com
                                        astrong@debevoise.com
                                        nmflores@debevoise.co

                                        Justin M. Shindo (*admitted pro hac vice*)
                                        DEBEVOISE & PLIMPTON LLP
                                        801 Pennsylvania Avenue N.W. – Suite 500
                                        Washington, D.C. 20004
                                        (202) 383–8000 (phone)
                                        (202) 383–8118 (fax)
                                        jmshindo@debevoise.com

                                        *Attorneys for Darryl Taylor*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on March 5, 2024, a copy of the foregoing MEMORANDUM OF LAW IN

SUPPORT OF MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. §

3582(c)(1)(A)(i) was filed electronically. Service of this filing will be made on all ECF-

registered counsel by operation of the Court's electronic filing system. Parties can access this

filing through the Court's system.

                                                         */s/    John Gleeson*

                                              John Gleeson (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Blvd.
New York, NY 10001
(212) 909–6000 (phone)
(212) 909–6836 (fax)